# THE ECKINGTON & SOLDIERS' HOME RAILROAD COMPANY.
## *v.*
## HUNTER.

EVIDENCE ; EXPERT TESTIMONY ; STREET RAILWAYS ; RIGHT OF
WAY ; CROSSINGS.

1. In a damage suit growing out of a collison between a wagon and a
   street railway car, it is not error to allow a witness to testify
   as to the apparent speed of the car at the time of the accident.
   Such testimony is not expert testimony.
2. Where in such a case the declaration alleges that no signal or warn-
   ing was given by the motorman of the car, while testimony of
   some of plaintiff's witnesses is to the effect that the bell was
   rung by the motorman, the variance is not such an one as to
   justify the trial court directing a verdict for the defendant.
3. Street railways have not even the same limited right of precedence
   over travelers at crossings as steam railways have.
4. In a suit for damages against a street railway company growing out
   of an accident at a crossing, it is error for the trial court to in-
   struct the jury that the defendant was bound to use extraordi-
   nary precautions at the crossing, and that they are to determine
   whether under all the circumstances a flagman should have
   been stationed there or other means taken to prevent accidents.

No. 435.   Submitted April 18, 1895.   Decided May 7, 1895.

HEARING on an appeal by the defendant from a judg-
ment on verdict in an action to recover damages for per-
sonal injuries. *Reversed.*

The COURT in its opinion stated the case as follows :

The appellee, James W. Hunter, was in the service of a
milling firm on August 12, 1891, as driver of a grain
wagon.   It was a large wagon drawn by three mules, two
at the wheel and one in front.   He was on his way from
the railway depot with a heavy load of grain, to the mill

in Georgetown, driving along Massachusetts avenue. De-
fendant's railway runs along Fifth street, N. W. At the
intersection, an electric car ran into the wagon, breaking
down a front wheel, and throwing Hunter to the ground.
He sustained a compound fracture of a leg and other in-
juries. The jury found in his favor and gave him a verdict
for $2,500, upon which judgment was rendered.

[At the trial, one Bowman, a witness on behalf of the
plaintiff, was allowed, over the objection of the defendant,
to testify as to the apparent speed of the car at the time of
the accident. To this ruling, the defendant excepted, and
the exception forms the basis of the first assignment of
error.

At the close of all the evidence, the defendant prayed
the court to direct a verdict in its favor, upon the grounds,
first, that there was a fatal variance between the allegations
of the declaration and the proof, the declaration alleging
that no signals or warning were given by the defendant of
the approach of the car, and that the plaintiff did not see
or hear the car, and his own testimony being that while he
heard no bell he saw the car, and the other witnesses in
his behalf testifying that the bell was rung by the motor-
man ; and, second, that there was no sufficient proof of
negligence to entitle the plaintiff to recover. But the court
refused the instruction, and the defendant excepted.

On behalf of the plaintiff, seven instructions to the jury
were granted as follows, to each of which exception was
taken on behalf of the defendant:

" 1. If it appears from the evidence that Massachusetts
avenue and Fifth street N. W. crossed or intersected, and
that in consequence thereof and of the construction and
operation of the Eckington and Soldiers' Home Railroad by
electricity the crossing was rendered to conveyances and
persons driving teams unusually dangerous, it was the duty
of the railroad to have guarded and protected the crossing
from collision or accidents by the employment of watchmen
or flagmen or other reasonable instrumentalities, and if the

defendant failed to do so and because of such failure the plaintiff was injured as set forth in the declaration, he should have a verdict in his favor, provided you shall further find that the plaintiff was not guilty of negligence which directly contributed to cause his own injury of which he now complains."

" 4. The defendant or the employees or its servants must be presumed to have understood the machinery of the cars of the defendant and of the agency used in propelling the cars, and of the velocity with which they were propelled, and in view of these facts it was specially obligatory on them to look out for pedestrians or vehicles on the street, and especially at crossings of streets, and, among others, at Massachusetts avenue and Fifth street N. W., and if they failed to seasonably perform this duty, and as a consequence the plaintiff was injured as set out in the declaration, he is entitled to a verdict in his favor if he was not also guilty of negligence or want of reasonable care and prudence."

" 6. If the jury believe from all the facts and circumstances of the case in evidence· that the plaintiff, while in charge of a team of mules attached to a wagon, and while driving along Massachusetts avenue N. W., in the city of Washington, entered on Fifth street for the purpose of driving across it, and that he did so with common care and prudence, and without negligence on his part, with the wagon of the plaintiff and the team in his possession, they were run into negligently by one of the cars of the defendant and the plaintiff thrown from his seat and as a consequence injured, he is entitled to recover, and the verdict should be in his favor."

" 8. If the jury believe from the evidence and circumstances of the case that the plaintiff acted without reasonable care and caution in entering on Fifth street N. W., in the city of Washington, and in attempting to cross it when and as he did, or as a car of the defendant appeared (if it did) at or near I street N. W., and in this respect was

guilty of negligence; yet if the jury further believe from the evidence and circumstances of the case that the defendant, by the use of reasonable care and prudence on the part of its motorman or the conductor, when advised of the perilous position of the plaintiff and after seeing the same, could have prevented or avoided the collision or accident which led to or produced the injuries of the plaintiff and failed to use such care and prudence, the plaintiff would be entitled to a verdict in his favor."

" 9. Fifth street is one of the original streets of the city of Washington, laid out and dedicated to the use of the people of the District of Columbia and the United States, including travel on foot and by vehicles, and this right cannot and has not been taken away by the act of Congress authorizing the defendant, ' The Eckington and Soldiers' Home Railroad,' to use the street, and the cars of the company can only run on said street with due regard to the rights of others on the street and not to their exclusion or by any paramount right or claim, and if the jury believe from all the evidence that the car of the plaintiff was running at or near the spot of the collision with unnecessary velocity or without reasonable care and caution and in consequence came in contact with the wagon or mules driven by the plaintiff while he was moving cautiously and with reasonable care and prudence over Fifth street N. W., going west or to Georgetown, and because of or by the contact or collision he was injured in his body and sustained a compound fracture of his leg and other injuries, as testified to, he is entitled to recover damages for the injuries received by him."

" 12. It is for the jury to consider the credibility of witnesses, and in doing this they may have regard to the bias of the witness as manifested in their evidence, if any; their connection, if any, with the parties by employment or interest; their condition for correct observations or their power to note and observe, and the manner of testifying, and they may give the greatest weight to the witnesses

who appear the least biased from employment or interest with either party, the most capable of calm observation and notice of occurrences, and who are most composed and tranquil in their manner of giving evidence. They may note the manner of the witnesses, their candor and apparent honesty and intelligence, and give to each witness such credit and weight as in the judgment of the jury each may be entitled to receive."

" 13. If the jury find in favor of the plaintiff they must consider and decide what amount of damages he is justly entitled to. In determining this they may consider the nature and extent of his injuries, the degree and amount of his suffering at the time of his injuries and immediately thereafter and up until the present ; the expenses, medical and otherwise, which he has incurred in being relieved from his injuries, and what the effects of his injuries will be in the future."

The defendant presented nine requests for instructions to the jury, the first of which was modified by the court and granted as modified ; those numbered 3½, 5 and 6 granted as prayed, and those numbered 2, 3, 4, 7 and 8 refused, to which refusal and also to the modification of the first instruction, the defendant excepted.

"1. To entitle the plaintiff to recover in this action it is incumbent upon him to show by clear preponderance of testimony that no warning or signal of the approach of its car was given by the defendant's employees in charge of the car, and that, in consequence of such omission to give such warning or signal, the plaintiff did not see or hear the approach of the car until it was too late for him by stopping his team or turning it to avoid the accident." This instruction the court modified so as to read:

" To entitle the plaintiff to recover in this action it is incumbent upon him to show by clear preponderance of testimony that no timely warning or signal of the approach of its car was given by the defendant's employees in charge of the car, and that, in consequence of the omission to give

such warning or signal, the plaintiff did not see or hear the approach of the car until it was too late for him by stopping his team or turning it to avoid the accident."

"2. In view of the characteristics of plaintiff's vehicles and defendant's car, as shown in proof, as between the plaintiff and defendant, the defendant's car was entitled to the right of way as against the plaintiff's wagon, and the men in charge of the car had the right to reply upon the recognition of this right of way by the plaintiff; and if the jury find from the evidence that the plaintiff disregarded the defendant's right of way, and that after discovering that the plaintiff intended to so disregard it, and that in consequence of such disregard his wagon had been placed in such a position that an accident could not be averted by stopping his team or turning it, all reasonable efforts were made to stop the defendant's car, then the plaintiff is not entitled to recover in this action."

"3. If the jury find from the evidence that the defendant's car was very heavy and was moving on fixed tracks on a down grade, and that the vehicle driven by plaintiff was an ordinary wagon drawn by mules, which was moving on an up grade and not confined to fixed tracks, then they are instructed that as between said car and said wagon the car was entitled to the right of way, and if they find that the alleged accident occurred by reason of plaintiff's disregard of the right of way of defendant's car, then the plaintiff is not entitled to recover."

"3½. It was the duty of the plaintiff, before attempting to cross the tracks of the defendant, to look and listen for approaching cars; and if the jury find from the evidence that the plaintiff neglected to observe any one of these precautions, and as a consequence attempted to cross said tracks in front of defendant's car and so close to it that the accident was unavoidable, then the plaintiff is not entitled to recover.

"4. If the jury find from the evidence that the plaintiff might have avoided any collision with defendant's car by

either stopping or turning his team, but that in consequence of an error of judgment the plaintiff endeavored to cross in front of the car when it was too near for him to safely do so, and thereby the accident was occasioned, then the plaintiff is not entitled to recover."

"5. If the jury find from the evidence that the plaintiff had frequently driven across the defendant's track at the intersection of Fifth street and Massachusetts avenue and knew that said tracks were used by heavy cars propelled by electricity, then they are instructed that it was plaintiff's duty before attempting to cross the said tracks to look and listen for approaching cars, and if a car was ascertained to be near to stop and wait until it had passed, and that if the jury believe from the evidence that the vehicle driven by plaintiff could easily have been stopped or the team drawing it turned aside so as to prevent an accident, and if they further find from the evidence that the plaintiff neglected to so look and listen or to stop or turn aside his team, then the plaintiff is not entitled to recover in this action unless you find that the defendant was wilfully negligent in not stopping the car when it could have done so in time to have prevented the accident after discovering the peril of the plaintiff."

"6. If the jury find from the evidence that the plaintiff, approaching in his wagon the tracks of the defendant on Fifth street near Massachusetts avenue, could not see north until the wagon had passed upon the tracks; that plaintiff knew this fact, and also that the tracks were used for heavy cars moving rapidly and at that point on a down grade; that without exercising reasonable care in ascertaining whether a car was near the plaintiff drove upon the defendant's tracks, and that thereby the accident was occasioned, then the plaintiff is not entitled to recover unless you find that the defendant was wilfully negligent in not stopping the car when it could have done so in time to have prevented the accident after discovering the peril of the plaintiff."

"7. If the jury find from the evidence that the wagon

used by plaintiff was so out of repair that it could not be turned as readily as wagons of that class are usually turned, and that thereby the plaintiff was prevented from turning his wagon and avoiding a collision with defendant's car, then the plaintiff is not entitled to recover in this action."

"8. If the jury find from the evidence that the plaintiff, after he became aware of the danger of a collision, might have escaped personal injury by jumping from or into the wagon, and that he failed to do so, then he is not entitled to recover in this action."

The court of its own motion charged the jury as follows :

" Gentlemen of the jury, in the cause now on trial before you Mr. James Hunter is plaintiff and The Eckington & Soldiers' Home Railway Company of the District of Columbia is defendant. The case has now reached the point where it becomes necessary for the court to instruct you as to your duty, so far as the law is concerned.

" The plaintiff in his declaration claims that on the 12th day of August, 1891, at or near the intersection of the railway of the defendant, on Fifth street with Massachusetts avenue, in the city of Washington, by reason of the gross negligence and carelessnes and default of the defendant, in the District of Columbia, the said defendant, not performing and regarding its duty and without signals or warnings to protect against accidents, made no effort to secure persons passing along or crossing the said street or avenue at their intersection against accidents, by means of which and in consequence of which gross negligence and carelessness to perform its duty in that respect aforesaid the plaintiff then and there, to wit, on the day and year aforesaid, while driving along on a loaded wagon drawn by three mules at a moderate and careful walk on said Massachusetts avenue or highway at or near the intersection of Fifth street and not hearing or seeing the approach of any car on said line of railway, was in the act of crossing the said Fifth street when suddenly one of defendant's electric cars ran

into the team and wagon that plaintiff was driving before it
was possible for plaintiff after hearing and seeing said car
coming at a rapid rate of speed upon him for the first time,
when he was in the act of crossing the track, to stop his
team in time to hasten it over in time to avoid the collision
unless the car was stopped, as it could and should have
done by the defendant's conductor and agent, who, having
a better view from his position than the plaintiff, could
easily have run slower or stopped his car and prevented the
collision, which resulted in smashing and breaking the front
wheels of the wagon and in throwing the plaintiff out of
the wagon and among the wreck, where he was knocked
down, greatly bruised, and injured so as to render him un-
conscious, and through the gross carelessness and negli-
gence and default of the defendant, by its agent or agents,
whereby the bones of plaintiff's right leg were broken, his
flesh greatly lacerated and bruised, producing compound
fracture of his bones and profuse hemorrhages of blood,
and whereby his shoulders, chest, back, and spine were in-
jured ; and plaintiff, from the effects of which collision and
throwing, was internally injured, and his stomach and other
organs become inflamed, and his broken leg, ankle, and
foot have caused him continuous pain and suffering until
the present time, and, as he verily believes (notwithstanding
he has had the very best medical and surgical treatment),
his injuries to a great extent are permanent and enduring.

" The further averments are as to his continued suffer-
ing, etc.

" You will perceive, gentlemen of the jury, that the
charge here against the defendant is that its servants were
careless and negligent in respect of the management of
their car with reference to the plaintiff while attempting to
cross this street, and that he, while in the exercise of due
care and caution on his own part, was, in consequence of
this negligence on the part of the defendant's agents, in-
jured in the manner stated in the declaration.

" The burden of proof rests upon the plaintiff to prove

the alleged negligence of the defendant or the defendant's agents. That must be established before the plaintiff has any ground whatever for receiving a verdict in his favor. But the term 'preponderance of the evidence' is not meant any particular amount of evidence more on the one side than the other; it means that, in your judgment, it must be shown, perceptibly and appreciably, that there is more evidence in favor of the proposition than there is against it—in this instance, that there is more evidence in favor of the theory of negligence of the defendant than there is to the contrary.

"In a general way, gentlemen, if you should become satisfied that the defendant was guilty of negligence it will be·necessary for you, before returning a verdict, to ascertain from the evidence whether the plaintiff was himsel guilty of negligence; and should you find the defendantf guilty of negligence, you must find that it was such negligence as contributed directly to cause the injury to the plaintiff.

"The same consideration must obtain to your inquiry as to whether or not the plaintiff was negligent. If the plaintiff was in some sense negligent; yet if his negligence did not contribute directly to his injury, he is not to be charged with it nor blamed, so far as his actions were concerned. To prevent the plaintiff from recovering on the ground of contributory negligence, you must find him to be guilty of negligence which directly contributed to the injury involved in this suit.

"Now, it sometimes happens that both a defendant and a plaintiff, in these cases of negligence, are shown by the evidence to have been careless, imprudent, and negligent. In such a case as that the law affords no remedy to the injured party. If it is clear that his own negligence caused his injury as well as that of the defendant, the law says that you cannot apportion negligence, and that the plaintiff, having been negligent himself in a way that directly contributed to cause his injury, can have no remedy for the injury he has received.

" It is not the duty of the plaintiff to disprove his own negligence or to prove that he was prudent and careful. (The law presumes, if there is no proof at all upon the question as to whether he was negligent or not, that he was prudent), and therefore the burden of showing the plaintiff's negligence is upon the defendant. The defendant must show that the plaintiff was negligent in order to prove such negligence as would prevent him from recovering. But when you come to consider the question of the negligence of the plaintiff as well as that of the defendant, you should look at all the testimony in the case—that given by the one side as well as that produced by the other. If in the plaintiff's own testimony you discover evidence which tends to show that he was negligent you will consider that in connection with such evidence as the defendant offers in order to show the negligence of the plaintiff; and if upon the whole evidence you come to the conclusion that the plaintiff was negligent (that is to say, in such a way and to such an extent as to directly contribute to his own injury), then, whether the defendant was or was not negligent, you will return a verdict in favor of the defendant.

" To recapitulate, gentlemen, before you can find a verdict against the defendant you must find that the defendant or the defendant's agents were negligent in such manner as that it contributed directly to cause the injury of which the plaintiff complains. If you do not find that, then you will return a verdict for the defendant. If you do find that the defendant was negligent in such a manner as contributed directly to the injury of the plaintiff, you will then go further and inquire whether the plaintiff was negligent or not ; and if you find that he was negligent in such a way as that it contributed directly to his own injury, you will return a verdict for the defendant, whether the defendant was negligent or not. If you find that the defendant was negligent in such a way as to contribute directly to the injury of the plaintiff and do not find from the evidence that the plaintiff was also negligent in such manner

as to contribute to his own injury, you will in that event find a verdict for the plaintiff and assess the proper damages.

" A good many prayers were authorized by the court to be read to you as the law, and they were read to you yesterday, but, inasmuch as some little time has elapsed since they were read, to refresh your memory I think I will read them to you again. It may be that I shall have some further comment to make as I go along.

" I will first read the prayers granted on behalf of the plaintiff, which you should regard as being the law in the case, with such explanations as I may make of them to you further.

" The first prayer of the plaintiff is as follows :" The Court here read plaintiff's first prayer, and proceeded :

" You have heard the evidence, gentlemen, in regard to the situation of this place and some peculiarities connected with it. The view from Massachusetts avenue to Fifth street and on Fifth street north of the intersection of Massachusetts avenue with Fifth street seems, by the evidence, to be obstructed by buildings for a certain portion of the way, as a person coming from the east and going to the west is approaching this crossing. After passing the buildings which are said to be an obstruction to the view there is some evidence in relation to trees and shrubbery which has the effect of preventing vision on the part of the person who might be approaching the crossing of this railroad from the east on Massachusetts avenue. You have heard that evidence, and you have also heard evidence to the effect that there is another railway crossing Fifth street in that immediate vicinity. You have heard the evidence as to the amount of travel, the number of people that are coming and going there on foot, on horseback, or in vehicles of one kind or another, and it it is for you, looking at all the evidence in the case, to say whether that is such a crossing as that, in the exercise of due care and prudence and regard for the people and property of this city and of

those who may be in the city and in that locality, the railroad company ought to have some instrumentality there by which people would be warned of danger, either by way of some person being stationed there or having sign boards up or by means of some other effectual instrumentality, whereby people might be warned of the dangerous nature of the crossing, so that collisions and injuries from collisions might be avoided. If you find that there should have been, in this particular locality, some such instrumentality used for the purpose of warning people who travel that way, then not to have furnished it or them would be negligence on the part of the defendant; and if you find that in that way, owing to the peculiar locality and arrangement of the shrubbery and the houses and the trees and the crossing and owing to the whole situation as developed by the evidence, it was so dangerous as to require care and prudence on the part of the defendant to have caused them to furnish these instrumentalities, whatever in your jndgment they ought to have been, and if you find from the evidence that they were not furnished, and that the accident resulted to the plaintiff in consequence of the want of such means and methods of protection as I have alluded to, then the defendant might be regarded as guilty of negligence in this case.

" Of course, there are many other things to which you may look for the purpose of ascertaining whether the defendant was guilty of negligence, as, for instance, whether the defendant's agents, when they were upon this car, could have looked and have seen the plaintiff in ample time to have protected him, to have stopped the car before they reached the crossing. If they could have done so by an outlook, if there was nothing to prevent or obstruct their view of the plaintiff in the situation in which the evidence may show him to have been, then it would be negligence upon their part not to have observed him, because in running a street car through the streets of a city like Washington common care and prudence require that the agents

and servants of the defendant who were entrusted with the management and running of that car should keep an outlook as to the way in which they are traveling in order to avoid accidents and in order to avoid injury to people who may be traveling upon the highways of the city. That will be a matter for you to look at, and there may perhaps be something more in this connection to which I shall call your attention further along."

- "The privilege given by Congress to the Eckington and Soldiers' Home Railroad to operate a street railway in the city of Washington must be considered in reference to the character of the privilege conferred, and if it appears from the charter of the company and the evidence that it accepted a charter which involved the running of a street railroad, among other streets, over Fifth street N. W., at its intersection of Massachusetts avenue, with new appliances and machinery and through the agency of electricity, and these added to the danger of travel on said Fifth street and Massachusetts avenue, it was incumbent upon the railroad to act accordingly, and to operate its road in a manner corresponding to the increased danger, and to take all reasonable precaution to guard the public from accidents, and if on the 12th day of August, 1891, it had omitted or neglected this duty and the plaintiff was injured by such omission or neglect, without fault on his part, the verdict should be in his favor."

"That is substantially what I have already said to you, and what is in the first prayer I read to you. I did not intend to read this because of that fact. This having been read, I have one further qualification to make of it, inasmuch as it closes by saying that you should 'render a verdict in his favor' if you find the defendant is negligent in regard to observing due care and caution in running this road—that is, that you can render a verdict in favor of the plaintiff if you so find, and provided you do not find that the plaintiff was guilty of negligence in a manner that contributed directly to cause his own injury." Plaintiff's prayers numbered 4, 6 and 8 were here read.

" It is the duty, gentlemen of the jury, of every one who sees another human being in peril from some instrumentality over which the one who perceives the danger to the other has control to use every means in his power to avoid injury to the person so in peril, and it makes no difference that the person who is in peril has carelessly and negligently placed himself in that peril ; and so, as a matter, perhaps, of public policy, the law provides a rule to the effect that although a plaintiff, for instance, in a case may have been shown to have placed himself in a perilous condition or position, yet if the defendant in that case actually saw the plaintiff in the perilous position in ample time or in time so that he, the defendant, or his agents, by the exercise of diligence, could prevent the accident or injury to the plaintiff who was in peril, then if the defendant or the defendant's agents neglected to use every effort in his or their power to prevent the accident or injury the defendant is liable, notwithstanding the plaintiff may have been careless and negligent in placing himself in the perilous situation. The law regards negligence of a defendant under such circumstances as amounting to wilful negligence, wilful injury to the plaintiff. A defendant having seen the peril of a plaintiff and failing to use the instrumentalities which were within the power of the defendant or his agents to use to prevent the injury to or, it may be, save the life of a person in peril is regarded as committing what is equivalent to wilful injury or injury resulting from the wilful act on the part of one person towards another, and the law provides that in such a case and under such circumstances the plaintiff, although negligent, may recover ; and that is the purport of the prayer which I have just read to you. I instruct you, gentlemen, that you are to look at all the evidence to determine whether there is any room for applying any such rule in this case as the one I have just mentioned. It is contended on the part of the plaintiff (I do not know with how much force), that if you should find the circumstances attending the accident to be as mentioned in the last in-

struction I have read to you, that this rule can be applied. You have heard the argument of counsel and you have heard the evidence, which I do not intend to rehearse or to reiterate, but I merely desire to call your attention to it and have you look at it to see whether there is any evidence in the case of any sufficient importance to justify you in so finding the fact to be, namely, that the defendant's agents, after seeing the peril in which the plaintiff was placed or about to be placed should they go on with their car, had time to have stopped the car and prevent the injury.    If they did and neglected to stop the car, the defendant should be held liable, notwithstanding you may think that the plaintiff was negligent in placing himself upon the track in the manner which the evidence may indicate to your minds that he did."    The court here read plaintiff's prayer numbered 9.

" (Something has been said, possibly in your hearing, by counsel in the course of this trial as to the question whether the street railway cars had the right of way in preference to the plaintiff, had a paramount right to occupy the track and pass backwards and forwards in preference to a person who might be traveling upon an intersecting street with reference to the crossing, and the instruction which I have just given you is to the effect that that there is no paramount right upon the part of either party ; both are alike lawfully entitled to travel upon and across the streets).

" Of course travellers in ordinary vehicles or pedestrians are to look to the fact, known and of course understood by everybody at the present time, at least in this community, this District, that a street car propelled by electricity or by any great power, such as a cable, proceeds with momentum, and if a collision occurs becomes very destructive to an ordinary vehicle or to a person and enhances to a certain extent necessarily the danger of travel.    It requires the exercise of more vigilance, more care, and more alertness on the part of people who travel in the city, and especially if they are travelling in the vicinity of these cars or are

attempting to cross in front of any of them, than would be exercised or would be necessary to be exercised if these street railways were not present, and in that respect common prudence, ordinary prudence (because that is the test) —ordinary prudence would require the exercise of such a degree of care and alertness as I have mentioned upon the part of the person who is about to cross one of these tracks upon which are propelled these cars by electricity ; ordinary prudence would require that such care should be exercised by the person so undertaking to cross, whether in a vehicle or otherwise, because the danger is much greater than it would be were the highway traveled upon only by ordinary vehicles.   These cars proceed with greater rapidity and greater momentum, and a collision results in greater destruction and injury.   So, in undertaking to estimate whether or not the plaintiff was guilty of negligence or whether he exercised ordinary care and prudence in the manner in which he conducted himself, as is shown by the evidence, you will bear this in mind, that he was bound to exercise ordinary care and prudence with reference to the situation and the circumstances, with reference to the fact that he was crossing a railway upon which were propelled these electric cars, and he should have been correspondingly vigilant over and above what he would have been upon an ordinary highway, in order to be in the exercise of ordinary prudence and care under the circumstances ; and, taking the situation into consideration, ordinary prudence is always the rule by which a party is to be governed and to be judged ; but ordinary prudence under some circumstances would not be ordinary prudence under others ; it depends upon the peril of the situation ; the more perilous it is, the greater the care and prudence required of a party who may be in the vicinity and liable to injury, although it is only ordinary care and prudence, such prudence as ordinarily prudent men would exercise under like circumstances and in such a situation."

Plaintiff's instructions numbered 12 and 13 were here read:

" There are some prayers also for the defendant which

the court has granted and which I will again read in your hearing, so as to refresh your recollection." Defendant's first instruction, as modified by the court was here read, and the court proceeded:

"(Perhaps one word should be said here in connection with this instruction. While I think it is correct, yet there are circumstances possible under which the jury would be authorized to look at this matter in a different light from what is indicated by this instruction.. Where a party is suddenly and without fault on his part confronted with a great and imminent peril the law does not hold him to the greatest strictness in regard to what he may do. Sometimes such a situation has the effect (upon many persons) of paralyzing them, taking away their power for action, their will power, and their power to do anything for self-preservation for the moment, for the time being. Where the situation was such that there were ways by which the person injured might possibly have avoided the threatened injury or danger and he did not think of it or did not do it, it is to be left to the jury to say whether under the circumstances it was his fault, and the question is one which the jury should determine after a fair consideration of all the circumstances and the situation in which the plaintiff was placed. There are persons upon whom the effect of being confronted suddenly with a great danger seems to be to brighten their faculties and to increase their will power and their power of acting quickly ; the remedy or the way of avoiding the peril seems to suggest itself readily, and the power to act comes with the thought that they may save themselves in a certain way, and they act promptly ; but the experience of mankind shows that it is not everybody who can do that, and so, under such circumstances as these, the question of contributory negligence on the part of the plaintiff is one to be considered by the jury. This explanation is suggested simply by the expression in this instruction that ' if the plaintiff did not see or hear the car in time to turn his horses or to drive them off the track,' etc. If he

might possibly have turned them and thus avoided the injury to himself and the wagon it is for you to say whether in not doing that, in so far as the negligence may consist in not doing that, negligence should be charged to the plaintiff, in view of all the surroundings).

"Of course you will look to see whether there was negligence on the part of the plaintiff in going on the track at all. I will speak of that hereafter." Defendant's instruction numbered 3½ was here read.

"(You should look to all the evidence, gentlemen, which seems to be involved in the determination of this question of the duty of the plaintiff. You should first inquire whether by looking the plaintiff could have discovered the car of the defendant or whether if he had listened carefully he could have determined that there was a car coming. You should look to the fact that it has been testified here that there was another car coming along—a car of the Columbia Railroad—crossing about the same time, and that there were other vehicles in the neighborhood passing back and forth upon the streets, in order to determine whether under all the circumstances he would have heard or could have heard and determined that there was a car coming, and it will be for you to say, gentlemen, in view of the fact that the evidence discloses that the plaintiff was in the habit of traveling upon that street and frequently crossed there before and was fully aware of the situation—the fact of the railroad tracks being there—whether it would have been required of him, owing to the dangerous situation and owing to the fact that there were obstructions which prevented him from seeing or may have been (I do not know what you will find from the evidence on that subject); but assuming you find from the evidence that there were obstructions which prevented him from seeing the car until he had approached very nearly to where the crossing was—until he had got out upon the track—it will be for you to say whether, asuming that to be true, he should not have ventured to go upon the track until he had, if necessary,

gotten down from his wagon and gone to a point where he could see whether there were cars coming or not. It will be for you to say whether that was the exercise of ordinary care and prudence; such care and prudence as an ordinarily prudent man would exercise under the circumstances; because the plaintiff is not held to any higher degree of prudence. He is not to be held to the degree of care and prudence that a very prudent man, a very cautious man, would exercise, but merely to the degree of care and prudence which an ordinarily careful and prudent man would exercise under the circumstances. It will be for you to say under the evidence whether he should have done that in order not to have been guilty of such negligence as contributed to the result which followed)." Defendant's instruction numbered 5 was here read.

"I have already instructed you, gentlemen, as you will remember, that if the defendant could have stopped the car in time to have prevented this accident, and neglected to do so, then, even although the plaintiff may have been negligent in going upon the track, the defendant would be liable, and that is the condition attached to this instruction." Defendant's instruction numbered 6 was read.

"Gentlemen, there are only a few words more. If you shall find for the plaintiff, after the consideration of all the evidence, applying to your consideration of it the rules laid down for that purpose by the court, it will then be your duty to find what damages he is entitled to. In doing that you should assess damages fairly and reasonably with reference to the pain and suffering which the plaintiff has endured, with reference to the expenses which he has incurred and paid for medical attendance and nursing, and you can look to whatever testimony there may be as to his injuries being permanent, their having endured after a certain time, and as to whether they will be likely to afflict him to a greater or less extent in the future. You should look to all those points for the purpose, gentlemen, of determining what would be a fair compensation for his injuries, in so far

as mere money can compensate a person for anything of this kind. The damages which you may under such circumstances assess to the plaintiff should not be extravagant or exorbitant; they should not be levied by you for any purpose of mere punishment of the defendant, but only for the purpose of compensating the plaintiff. In your consideration of this case, the question of damages and all other questions involved in it, you should endeavor to divest your minds of any feeling of bias or prejudice, if you have any; if you are conscious of having any you should put them to one side. You should have no prejudice against the defendant because it is a corporation, nor against the plaintiff because he appears to be an humble citizen, a poor man, perhaps; you should not overlook or disregard the fact that his rights in this court are precisely the same and as precious and as much to be observed and looked after as the most prominent citizen in the land. The defendant is not to be punished because it is a corporation, having more or less property and more or less power or influence. It stands before you here simply as a defendant to uphold its cause. You should weigh the testimony fairly and for what it is worth, applying the rules which have been given to you by the court fairly and with judgment and as unerringly as it is possible for you to do. You are not to give damages to the plaintiff, however, out of sympathy because he is a poor man, unless the evidence shows that he is entitled to a verdict; but you will, upon a fair consideration of all the evidence, considering the actual injuries to the plaintiff and the responsibility of the defendant for them in the light of the law and of the evidence, determine upon what you may agree to be a just and fair verdict in the premises and return it."

The portions of the foregoing charge enclosed in parentheses were duly excepted to by the defendant. — RE-PORTER.]

*Mr. John Ridout,* for the appellant, cited:

*Elliott* v. *Railroad Co.*, 150 U. S. 245; *Railroad Co.* v. *Miller*, 25 Mich. 279; *Beisiegle* v. *Railroad Co.*, 40 N. Y. 9; *Hass* v. *Railroad Co.*, 47 Mich. 401; *Springman* v. *Railroad Co.*, 5 Mackey, 1.

*Messrs. Cook & Sutherland*, for the appellee, cited:

*Cont. Imp. Co.* v. *Stead*, 95 U. S. 161; *Railway Co.* v. *Converse*, 139 U. S. 469; *I. & D. Coasting Co.* v. *Tolson*, 139 U. S. 551; *Railroad Co.* v. *Harmon's Admrs.*, 147 U. S. 571.

Mr. Justice SHEPARD delivered the opinion of the court:

1. There was no error in permitting the witness, Bowman, to testify as to the apparent speed of the car. He watched the approach of the car and saw the collision. The speed of the car was an important fact in the case, and was not capable of better or more certain proof. Such evidence cannot be called expert testimony. It is evidence of a fact, the weight of which goes to the jury, and depends upon the capacity of the witness, his experience, and more particularly his opportunity for observation at the time.

2. There is no such variance between the allegations of the declaration and the proof offered in their support as could have justified the court in granting defendant's request to take the case from the jury, and it was properly refused. Moreover, it seems perfectly clear that the defendant could not have been misled by the form of the declaration and was not taken by surprise by anything in the evidence.

3. The court did not err in refusing to instruct the jury to return a verdict for the defendant. The right to take a case from a jury is one to be exercised only in plain cases and with great caution. We will consume no time with a review of the evidence set forth in the record; it would serve no useful purpose. In our opinion, it made a case

proper to be submitted to the jury, with an appropriate charge, laying down the rules of law applicable thereto.

The defendant's contention on this point is partly founded on the assumption that street cars have the preference of the crossing, under all circumstances ; that persons riding or driving are under a special obligation to look out for approaching cars and always to stop for them, and that the car drivers or motormen have the right to act upon this assumption. The soundness of this proposition will be considered under the next assignment of error founded on the charge given to the jury with respect thereto.

4. Defendant asked an instruction to the effect that the car was entitled to the right of way, and the men in charge of it had the right to rely upon the recognition of this right by the plaintiff. This was refused, and the court, on the other hand, charged the jury, that the defendant must run its cars with due regard to the rights of others in the lawful use of the intersecting streets, and that it had no right in preference to such other persons. The court did, however, call the attention of the jury to the greater dangers which lie in crossing streets upon which cars are run than others, and to the necessity for the exercise of a proportionate degree of care at such crossings by persons riding in ordinary vehicles.

Even in the case of steam railways, it has been held that the duties and obligations of those running the cars and of those who cross the track at proper places, are mutual and reciprocal. *Continental Imp. Co. v. Stead*, 95 U. S. 161, 165. In that case, it was said : " For, conceding that the railway train has the right of precedence of crossing, the parties are still on equal terms as to the exercise of care and diligence in regard to their relative duties. The right of precedence referred to does not impose upon the wagon the whole duty of avoiding a collision. It is accompanied with, and conditioned upon, the duty of the train to give due and timely warning of approach. The duty of the wagon to yield precedence is based upon this condition.

Both parties are charged with the mutual duty of keeping a careful lookout for danger. * * * The mistake of the defendant's counsel consists in seeking to impose upon the wagon too exclusively the duty of avoiding collision, and to relieve the train too entirely from responsibility in the matter. Railways cannot expect this immunity so long as their tracks cross the highways of the country upon the same level. The people have the same right to travel on the ordinary highways as the railway companies have to run trains on the railroads."

It cannot be said, however, that street railways have even this limited right of precedence. The necessities of their situation are quite different. Steam railway trains run upon fixed and regular schedules and at far greater intervals in even the largest cities. They move at a greater rate of speed, and are far more difficult to stop. Besides, they carry great numbers of passengers and important mails, and the reasons are many and controlling why they should be made to suffer as few delays as possible.

As a general rule, the charge should embody such propositions of law only as may be strictly applicable to the material issues raised by the evidence. In ordinary cases of accidents at crossings, it might be wholly unnecessary, and at times possibly misleading, to instruct the jury with respect to this claim of precedence. But when, as in this case, the equality of the rights of parties is disputed, or the question becomes important in the determination of the existence of negligence upon the one hand and of contributory negligence upon the other, the jury should be told that neither party has a superior right; that each must exercise his right with due regard to the equal right of the other and with reasonable care under all the circumstances; and that each must refrain from interfering with the right of the other. *Watson* v. *Minn. Street Railway Co.*, 53 Minn. 551; *O'Neill* v. *D. D., etc., Railway Co.*, 129 N. Y. 125; *C. W. D. R. Co.* v. *Ingraham*, 139 Ill. 659, 667; *Lynam* v. *Union Railway Co.*, 114 Mass. 83, 88. This was the substantial effect

of the general charge given, and there was no error in refusing defendant's special prayer.

5. In the course of a lengthy charge carefully defining the relative duties of the respective parties at the crossing, and submitting the question of plaintiff's contributory negligence in a manner rather favorable than otherwise to the defendant, the learned justice presiding at the trial went further, in one particular point, than justified by the law, in imposing a burden upon the defendant. He first gave to the jury a special prayer of the plaintiff, wherein they were told that, if the place was unusually dangerous, " it was the duty of the railroad to have guarded and protected the crossing from collision or accident by the employment of watchmen or flagmen or other reasonable instrumentalities ;" and if plaintiff was injured by reason thereof without contributory negligence on his part, he should recover, etc. He then referred to the evidence as to probable obstructions to the view, the crossing of another railroad in the vicinity, and the numbers of people using the crossing ; and told the jury that, " it is for you, looking at all the evidence, to say whether that is such a crossing as that, in the exercise of due care and prudence and regard for the people and property of this city, and of those who may be in the city and in that locality, the railroad ought to have some instrumentality there by which people would be warned of danger either by way of some person being stationed there, or having signboards up, or by means of some other effectual instrumentality, whereby people might be warned of the dangerous nature of the crossing, so that collision might be avoided. If you find that there should have been, in this particular locality, some such instrumentality used for the purpose of warning people who travel that way, then not to have furnished it or them would be negligence on the part of the defendant ; and if you find that in that way, owing to the peculiar locality and arrangement of the shrubbery and the houses, and the trees and the crossing, and owing to the whole situation as developed by the evidence, it was so

dangerous as to require care and prudence on the part of the defendant, to have caused it to furnish these instrumentalities, whatever in your judgment they ought to have been; and if you find from the evidence that they were not furnished, and that the accident resulted to the plaintiff in consequence of the want of such means and methods of protection as I have alluded to, then the defendant might be regarded as guilty of negligence in this case."

The act of Congress incorporating the defendant and conferring its franchises limits the speed of cars to nine miles per hour, but makes no other regulations. Although the city of Washington is traversed by many lines of street railways, propelled by cable, electricity, and other power, the Commissioners of the District have not undertaken to require them to have watchmen stationed at all, or any crossings.

As we have seen in the case of *B. & P. Railroad Co.,* v. *Golway, ante,* p. 143, there may be exceptional cases when at the crossings of steam railways by public highways, it might be proper to submit to the finding of the jury, if any precautions in addition to those required by statute, including even the maintenance of a flagman or a gate, were necessary to prevent injuries to persons in proper use of the highways. But the conditions and considerations operating in the case of street railways are quite different, as have been pointed out above. In the case of steam railways, too, their right of way, or of preference at crossings, is generally conceded, whilst, as correctly given in charge to the jury in this case, at the request of the plaintiff, street railways can claim no such right of preference. To require signs at street crossings would serve no useful purpose. Plaintiff admitted that he was familiar with the crossing and the character of the cars. People who traverse the streets know that many of them are crossed and recrossed by street railways, and they know that ordinarily the cars may be expected at any moment and at short intervals. Though their operation is necessarily attended with danger,

street railways are great public conveniences which could not well be dispensed with. To minimize those dangers they should be held to due and reasonable care in regulating the speed of their cars, and the skill and watchfulness of those in charge of them, and in sounding the bell or gong with which each car is provided.

These are precautions which common prudence and regard for public safety demand, and which the public have a right to expect. But extraordinary precautions, such as keeping flagmen at every, or at any particular crossing, are not to be imposed upon them at the option of a jury in a particular case. These must be left to the discretion and control of the law making power, or of the municipal authorities charged thereby with the duty of making all reasonable police regulations looking to the public safety and welfare. When these act, the requirement is defined and becomes fixed and invariable ; it must be taken notice of and observed by all, the public and the railway companies alike, and the conduct of all may be governed by the reasonable expectation of its observance.

The general charge was sufficiently explicit in defining the care and the precautions which the defendant was bound to exercise, and the evidence was such as to require the question of the negligence of the defendant and the contributory negligence of the plaintiff to be submitted to the determination of the jury.

The giving of the additional charge set out above was an error which may have misled the jury, and for that reason *the judgment must be reversed, with costs to the appellant, and the cause remanded for a new trial. It is so ordered.*