## PATRICK LYNAM *vs.* UNION RAILWAY COMPANY.

In an action for damage received from a collision, evidence that the plaintiff, while driving slowly in the highway upon the defendants' horse railroad track, attempted to avoid a rapidly approaching car by turning off from the track, but that, being hindered by the sliding of his wheel in the groove of the rail, he was struck by the car driven with unchecked speed, is evidence sufficient to be considered by the jury both upon the question of his care and upon that of the defendants' negligence.

TORT to recover damages for a bodily hurt, received in a collision between the plaintiff's wagon in which he was driving and the defendants' horse-car, caused by the negligence of the defendants' servant in driving the car.

At the trial in the Superior Court, before *Devens,* J., the plaintiff testified: "I am 60 years old, and a native of Ireland; resided in Lexington, December 24, 1870, and still do; came into Boston in my wagon with some pork and dead turkeys; a little, light, open wagon, and an old, slow horse about 17 or 18 years old; left Boston for home in the afternoon; stopped at Elkin and Webber's, corner of Brighton and Leverett streets, got there about quarter to six o'clock P. M., and left for home fourteen minutes to seven; when I got on drawbridge, two teams came along toward me; one wanted to get ahead of the other, and came up on the right, and I wore to the left to get out of the way; turned back to the right as soon as I saw horse-car; my wheel hung in the track; car had on four horses; the leaders swung to the right; I could have got out, but he pressed on going fast trot, can't say how fast; he did not favor me; struck me on nigh forward wheel; knocked me out insensible for the biggest end of an hour; when I came to, couldn't stir my left leg; was taken to station-house and from there to hospital, where I stayed Christmas day; next day they brought me home; when

I fell I struck on left hip; when I first saw car it was three or four or five times the length of my team, it was not a very dark night; was a moon; did not notice the car light; saw car itself; no moon in fore part of night; snow on ground; starlight; no clouds; anybody could see; car struck me so if I had two inches more I'd have escaped if he had favored any at all; was driving at times not very fast; was kind of walking; a getting out of the track; had a little, slow, old horse; wheel hung; was n't off walking; can't say how fast car was driving; on a brisk trot."

Upon cross-examination, he testified: "I went over the road to Boston some four times a week in summer; was well acquainted with the horse-cars; did n't notice the car light; they carry lights I know; saw the car a coming; the light did n't take my attention; can't say did n't see light of car; don't remember that I saw the light; don't remember but that I did see it; was in a little, light, one-horse wagon; had a little, old horse; easy to manage; stop him anywhere, or turn out anywhere. Left Elkin's store about quarter to seven. I trade there, and feed my horse there. Was getting groceries that night; going home, had for load two hundred weight of stock and a stove. My horse weighs about 800 or 900 pounds. The wagon had a low, movable seat, a little from the front, about twelve or fourteen inches inside; had my feet out over the foot-board; no rail to the seat; wagon was narrow; it don't fit the track by two or three inches; from the corner of Leverett and Brighton streets to the draw on bridge is a little over a couple of minutes; at time of accident I was going out beyond the draw; there was plenty of room outside the track to pass; could n't say whether lamps on bridge were lighted or not; no moon; stars were up when I left the store; when I left the shop from trading, there were stars; I could see, of course; could see car; no trouble about that; knew I had got to leave the way; could get off the track as I had a mind to, as short as I wanted; the way was perfectly smooth; plenty of room on the sides; knew that I was on right hand side, where horse-car might be coming; don't know how far from car when I first attempted to turn off; when I first saw them they were two or two and a half lengths of themselves from me; I don't

believe it was four times as far as that; I won't swear it; nothing prevented me from seeing the car; they did not take my attention before, nothing to prevent that I knew of; I was not looking out for them; when I was passing these teams, I did look out for them, and turned out as quick as I could; but won't swear that they were not eight lengths off when I first saw them; my horse was going a little sort of a canter, a little over a walk, but got into a quick step getting out of the way; turning out, my wheel hung in the track; I undertook to get out of the track a little slanting. As to the teams coming in — part of them was in the track; the front team was in the middle of the road, and the other trying to pass him on his left; they were teamsters' open one-horse wagons; both teams had gone by when I tried to turn off; I could have turned off at any angle; I thought that was as good a way as I could; I thought I had time enough to get out that way; the horse-car was coming brisk when I saw it first; couldn't say how many miles an hour; I don't know that I could tell that they were going over four miles an hour; I can't tell how fast I was going, a kind of a little canter, about two miles an hour, after I started to turn out; I was gradually getting away, inclining to the right; I wished I had inclined more; I suppose I might if I wanted to; I didn't think I was going to be hit; I might have turned shorter; the cars didn't brake a bit, no slack to their speed; I had no light; didn't need any; horses on car shied to right when I was nearing them; the leaders swung to the right; won't say about other horses; was kind of confused coming so near the horse-cars; my wagon didn't fit the track; a wheel will stick in the track; I was often catched before; I knew that there was a liability to be caught; I don't want to change my testimony; that car didn't slack at all; from the time the leaders shied till time the car struck there was no slack to speed; it was my forward wheel struck; never said 't was hind one; was pitched out into middle of street; fell on hip; no other mark except on hip; couldn't say how many were on front platform of car; three or four; wagon was not overturned but kind of slewed; I don't know as I can describe how a horse gets out of a walk; he gets a 'ittle quicker and then a little

quicker until he gets into a canter, and then he gets into a trot, and then I s'pose he gallops; I've been driving a horse this forty years."

Joseph Peacock testified for the plaintiff as follows: "I live in East Cambridge, and drive a team for John P. Squires; was on the front platform of the car coming in, and standing right behind the brake. The first thing I saw was the driver take hold of brake and put it on. Then the wagon and car came together; the car did n't stop still; it slacked up a little, and went right along; saw the wagon but half a second before it struck; saw the leaders swing out, turn off."

On cross-examination he testified: "I am used to driving horses; stood behind brake on platform on right hand side; believe there were one or two others there; don't know who they were; had nothing to do but look out ahead; first thing I saw was the driver put on the brake; horses sheered off a little at same time; we were going about five miles an hour; had no intimation before the leaders turned out; saw no team till half a second before it struck, then saw only hind part of wagon; should think driver, by way he acted, did all he could to stop the car; did n't mind whether he swung the horses off, or themselves did; did n't see anything but hind part of wagon strike car."

John P. Dengle testified for the plaintiff: "I was on horse-car on rear platform about seven o'clock; car was full as could be; was on step left side; was standing; felt a jar; saw a barrel team on left; saw Lynam lying between the tracks; got off; helped him to curbstone; car was driving at full trot, as fast as the horses could go; first thing noticed was a jar by striking against the team; can't say about putting on brakes; did not notice putting on brakes; car did not slack up."

On cross-examination he testified: "The night was rather dark; beginning of evening; no moon; not cloudy; saw stars, looking towards Charlestown; car was going at full speed, as fast as the horses could trot; cannot estimate the speed of horses cannot estimate whether were going one or fifteen miles an hour, car full inside; five or more outside; did not see horses; don't mean to say, to contradict Mr. Lynam, that horses were going

faster than five miles an hour; won't swear that brakes were not put on; will swear that I did not see brake checked; will swear that I did not feel check by putting on of brake."

James E. Murray testified for the plaintiff: "I was a Cambridge police officer at that time; had my beat on the bridge; found Lynam on the curbstone; he could n't stand; told me he lived in Lexington; was moaning, suffering pain."

On cross-examination he testified: "I found him sitting down about 200 or 250 feet Cambridge side of draw on Craigie's Bridge; bridge is all the same width till you come to the draw; evening not dark, nor yet light; no difficulty at all about seeing; from the time I got there till we put him into a wagon, all he said was, "How shall I get home?" and "I know Dewire, a shoe dealer;" don't remember that he said anything more."

The defendants introduced much evidence, which it is not material to set forth, as to the manner in which the collision took place, and at its close requested the presiding judge to make the following rulings:

"1. That upon the uncontradicted facts as shown by the plaintiff, he cannot recover.

"2. That upon the uncontradicted facts as shown by the plaintiff and the defendant, he cannot recover.

"3. That upon all the facts shown by the plaintiff and defendant, the plaintiff cannot recover."

The presiding judge refused so to rule, but submitted the case to the jury with full instructions as to the care required of each party, as to the respective rights of each party, and as to the burden of proof. The jury returned a verdict for the plaintiff for $2000, and the defendants alleged exceptions.

*G. A. Somerby & W. Emery*, for the defendants.

*P. E. Tucker*, for the plaintiff.

GRAY, C. J. The testimony introduced on the part of the plaintiff, upon which alone, as the defendants properly admit, this case is to be determined, laid before the jury all the circumstances attending the accident, and warranted them in finding that he was in the exercise of due care, and would not have been injured but for the negligence of the defendants' servants. *Mayo*

v. *Boston & Maine Railroad*, 104 Mass. 137. *Smith* v. *Gardner*, 11 Gray, 418. .The cases relating to injuries suffered by being struck by a locomotive engine at a railroad crossing afford no test of the degree of care required of the plaintiff in this case. The cars of a horse railway have not the same right to the use of the track over which they travel, do not run at the same speed, are not attended with the same danger, and are not so difficult to check quickly and suddenly, as those of an ordinary railroad corporation. A person lawfully travelling upon the highway is not therefore bound to exercise the same degree of watchfulness and attention to avoid the one as to keep himself out of the way of the other. *Exceptions overruled.*