Spear J.
The ground upon which the common pleas directed a verdict was that the plaintiff’s evidence disclosed contributory negligence of such a character as to preclude a recovery. In other words, the holding was that, as matter of law, the plaintiff was guilty of contributory negligence. If the plaintiff’s conduct, as shown by the undisputed facts, left no rational inference but that of negligence, then the ruling was 'right, but if the question of contributory negligence depended upon a variety of circumstances from which different minds might arrive at different conclusions as to whether there was negligence or not, then the ruling was wrong. This follows from the rule given in Ellis & Morton v. Ins. & Trust Co., 4 Ohio St., 627. Applying the doctrine of that *202 case, the motion involved an admission of all the facts which the evidence in any degree tended to prove, and presented only a question of law, whether each fact indispensable to the right of action, and put in issue by the pleadings, had been supported by some evidence. If it had been, no matter how slight the evidence, the motion should have been denied, because it was the right of the plaintiff to have the weight and sufficiency of his evidence passfed upon by the jury. But if he had failed to give evidence tending to establish any fact without which the law would not permit a recovery, he had nothing to submit to the jury, and a question of law only remained. We are aware that this rule is much criticised, and plausible arguments against its reasonableness have been adduced, but it has been followed uniformly, and should be applied until definitely overruled, or changed by legislation.
The plaintiff was himself bound to use ordinary care, such degree of care as a man of ordinary prudence commonly uses under like circumstances; care proportioned to the danger to be avoided, and the consequences which might result from want of it, conforming in amount and degree to the particular circumstances under which it was to be exercised. If all people exercised the greatest possible caution in approaching and crossing railroad tracks, accidents would be much less frequent than they are; but the law does not require extreme care. Such care, and such only, as ordinarily prudent persons could reasonably be expected to exercise under the circumstances is the full measure. In order, therefore,to judge whether or not a fair question was presented regar ding plaintiff’s contributory negligence we must inquire into *203 the circumstances as disclosed by the evidence.he introduced.
The evidence showed that the company’s road is operated on Eastern avenue, Cincinnati, a thoroughfare running east and west. It is a double-track electric road, the space between the tracks being about three feet. The cars are wider than the track, extending about one foot outside the rail. Defendant in error, Snell, resided on the north side of the avenue, between Washington and Weeks streets, the block between these streets being about 800 feet in length. Near his residence, in front-of a drug store, there was a flag stone street cross walk at which the cars were accustomed to stop to receive and discharge passengers. Snell-had been a daily passenger on the road for a number of years, and was known, as also his residence and place of getting on and off, to the railroad conductors. On the day of the accident Snell was a passenger on an east bound car on the south track. As the car approached the crossing the speed was slackened to allow Snell to get off, but did not quite stop. He stepped off outside of the south track at the crossing, and turned north to go to the north side of the street, which required him to cross both tracks. As he neared the south rail of the north track he was struck by a west-bound car and injured.
The evidence tended to show further that Snell xhad not observed the coming car before alighting, nor does it appear that he looked, while in the car, in the direction from which the other car was approaching. At some time, while crossing, he looked both east and west along the track, but the precise point from which he looked east is not clear. The conductor of the car on which he had ridden gave *204 him no warning of the approaching car, nor was any gong or other alarm sounded, or warning given, by the motorman in charge of the coming car. He was inexperienced, having been the driver of a milk wagon until two or three days before. On the same car there was an experienced motorman, who was on for the purpose of giving the new hand instructions. At the moment Snell was struck the car was running about twenty miles an hour, on a down grade, and ran about one hundred feet before it could be stopped. The car from which Snellalighted was moving slowly east, and, had the other car been running at an ordinary rate of speed, Snell would probably have had, after he saw it, opportunity to avoid it; but the car moved so rapidly that, after seeing it, he had but time to throwup his hands and try to step back when the car struck him.
Thequestion presentedfor thecourtwas, simply, Did the evidence establish, as matter of law, that Snell was guilty of negligence contributing to his injury? The place of the accident was a street crossing, used as such by the public, and recognized as such by the company. It was the duty of the company to keep in mind the right of pedestrians on that crossing, and especially its duty to observe the rights of its own patrons who were under a necessity of using that crossing in going from its cars to their houses. Ancient rights have not changed because new vehicles of travel have been introduced upon the streets, nor because a portion of the people who ride, being in haste to reach their destination, demand rapid transit. The streets remain for all the people, and he who goes afoot has the right, especially at a crossing, to walk to his destination; he should not be compelled to run, or to dodge and scramble, to avoid collision with vehicles. As agen *205 eral proposition, drivers of vehicles have the same right to travel along the carriageway of a street that foot passengers have to walk there. There is no priority of right, so that the right of neither is exclusive. But. it is to be borne in mind that the injury by collision is wholly upon the side of the footman; and the right of personal protection which every person possesses, together with that moral and legal obligation to refrain from doing an injury to his person which is imposed upon all others, gives the foot passenger such a right at street crossings as to make it the duty of drivers of vehicles, whether wagons, wheels or cars, to so regulate their speed and give such warning of approach, at whatever cost of pains and trouble on their part, as that the footman, using ordinary care himself and barring inevitable accident, may cross in safety. Life and limb are of more consequence than quick transit. The vehicle man must not run down the pedestrian. The opposite doctrine appears to have found lodgment in many minds, and there seems a disposition to assume that a foot passenger has nq right upon a public street as against a street car. Indeed, common observation seems to show that this belief controls the conduct of drivers of many conveyances, public and private. Too often there is a reckless disregard of human life and limb, and pedestrians are compelled, at their peril, to keep out of the way. As matter of law, it is as much the duty of the vehicle to keep out of the way of the footman, and especially so at crossings, as it is for the latter to escape being run over, giving due consideration to the greater difficulty of guiding and arresting the progress of the vehicle. The use of streets for railways is allowed only because it is considered not to be a substantial interference with *206 their free and unobstructed use as highways for passage. So long, therefore, as there is no unreasonable interference with the public right of passage, railways in streets are lawful structures; but if operated upon the theory of exclusive right to their track, they become wrongdoers. Street Ry. v. Cumminsville, 14 Ohio St., 523; Coach Co. v. Railroad Co., 33 New Jersey (Eq.), 267; Baxter v. Railroad Co., 3 Rob.,516; Barker v. Savage, 1Sweeny, 288; Ry. Co. v. Block, 55 New Jersey (Law), 605; Attorney General v. Railroad Co., 125 Mass., 515.
Undoubtedly the footman must reasonably use his senses for his own protection, and if he knows of the approach of a vehicle, and, using his faculties, perceives that he cannot continue on without danger of collision, he may not rush forward regardless of consequences. He is not bound, however, to anticipate negligence on the partof drivers of vehicles, but has the right to assume that they will not be negligent.
In this case, if the, evidence was to be believed, there was a total disregard of plaintiff’s rights, a clear case of gross, culpable negligence. The company owed to the passenger who had just alighted the duty of permitting him to cross from its car to the opposite side of the street without peril of life or limb from the acts of the company; instead of which it sent its car down the grade at break-neck speed without giving any Warning, or taking any pains to avoid running him down. Snell, it is true, was bound to anticipate that a car might come on the north track, but he was not required to anticipate that it would come at such a dangerous rate of speed, for that would be presuming that the company would be negligent; and if, acting on the presumption that the company would not be negligent, *207 he used such caution as men of ordinary prudence would have used, his own conduct did not preclude a recovery. Whether he did use such degree of care, we think, was a question for the jury. The evidence presented a case where different minds might reasonably reach different conclusions. We are not required • to determine the question whether or not Snell was negligent.
It is insisted that, in the best view of the ease for the plaintiff, the evidence shows that he did not look to the east; for while it maybe that the verbal evidence tended to show that he did look in that direction, yet he could not have done so, for if he had he surely would have seen the coming car, and that, as matter of law, it is neglig’enee for one about to cross a railway not to look each way. Authorities are to be found giving apparent support to this proposition. The practice in some courts is for the court to direct a verdict whenever, in the opinion of the judge, the evidence would not warrant a judgment. And some of these decisions imply that the court has held persons about to cross a street car track to the same degree of care as would be demanded were he crossing a steam railroad. We think there is no just analogy between the right of a street railway running cars along a highway and the right of a steam railroad running' its trains across a highway- at grade, and that the rule of care incumbent upon one about to cross a steam railroad is hardly a fair one to be applied in all its strictness to street railways in cities where a car that can be speedily stopped passes a crossing at frequent intervals, and where people necessarily cross the streets frequently and hurriedly. As remarked by Gray, C. J., in Lynam v. Ry. Co., 114 Mass., 83: “The cases relating to injuries *208 suffered by being struck by a locomotive engine at a railroad crossing afford no test of the degree of care required of the plaintiff in this case. The cars of- a horse railway have not the same right to the use of the track over which they travel, do not run at the same speed, are not attended with the same danger, and are not so difficult to check quickly and suddenly, as those of an ordinary railroad corporation. A person lawfully traveling'upon the highway is not therefore bound to exercise the same degree of watchfulness and attention to avoid the one as to keep himself out of the way of the other. ’ ’ Other cases in Massachusetts are to the effect that the fact that plaintiff’s evidence does not show that he looked up and down the street before crossing is not, as matter of law, conclusive evidence that he was notin the exercise of duecare, and that the mere fact of not looking when one attempts to cross a railroad is not conclusive evidence of want of care. Williams v. Grealy, 112 Mass., 82; Bowser v. Wellington, 126 Mass., 391; Shapleigh v. Wyman, 134 Mass., 118. Whether such omission is or is not negligence depends upon the circumstances. Ry. Co. v. Block, supra; City Railroad Co. v. Robinson, 4 L. R. A., 126; Street. Ry. Co. v. Loehneisen, 58 N. W., 535; Shea v. Railroad Co., 44 Cal., 414; Swain v. Railroad Co., 93 Cal., 179; Driscoll v. Cable Ry. Co., 32 Pac. Rep., 591; Thomp. on Neg., 396, note. We suppose the rule for street ears is the same as for other vehicles, and if the footman is required, in a crowded thoroughfare, to look up and down and wait until all possibility of collision is past, it would be like sitting on the bank until the stream should run by, and there would be but few hours in the busy part of the day when it would be practicable to cross.
*209 Whether looking eastward would have disclosed the coming car depends upon whether the receding car .would have obstructed the view, and this depends upon its location at the time Snell looked, if he did look. The evidence is consi stent with the conclusion that he looked up the track, but that the receding car prevented him from seeing the approaching one, and that, as the former made some noise, his attention was not called to the rúmbling of the latter. And it is not inconsistent with the conclusion that ordinary range of vision would probably have enabled him without turning his head or eyes up the track, to see a car in time to, avoid it had the car been running at a safe rate of speed, and we think one so crossing could not be asked to extend his observation beyond that distance within which a car proceedingat a customary and reasonably safe speed would threaten his safety.
Taking the effect of the evidence as a whole, one thing which is tolerably clear is that if the car had been running at a reasonable rate of speed, and proper warning had been given, Snell would not have been injured; all else is in more or less doubt. The evidence pro and con, therefore, was to be weighed, and the tribunal for that purpose was the jury, not the court upon the motion.
The judgment of reversal was, we think, right, and the same is affirmed.