IÍOSEA, J.
The facts in brief were that defendant’s wagon stood backed against the pavement curb, at right angles thereto. The loading, as appears, was completed. Certain planks projected from the wagon bed in the rear wholly or partially across the pavement. Some barrels stood at the house line back of the wagon, which more or less impeded the passageway—if any existed— at the rear -of the projecting boards. Plaintiff, coming along the pavement towards her home-near by, seeing or supposing *9 that there was no passageway at the rear, started to go into the street to pass around the obstruction as others had done. At about that time the driver mounted his wagon and started the horses quickly in such manner that the projecting lumber was swept with force, laterally around, across the pavement, struck the plaintiff, knocked her down and injured her severely. Plaintiff and her physician testified to her good health prior to the accident and to specific injuries to health resulting from the injuries received.
Objections based upon what are claimed to have been erroneous actions in the case by the trial court are here considered in the order presented.
1. That the plaintiff and her physician having testified that she was in good health before the accident, the attending physician who treated her for the injuries received was asked on cross-examination whether “regularity or irregularity of life affected a patient’s health,” and he answered affirmatively. Thereafter defendant proposed to prove by police officers that plaintiff led an irregular life, which testimony was excluded by the court.
Defendant admits that such testimony if offered to impeach the character of plaintiff would be properly excluded, but claims the offer was “for the purpose of showing that the injury- complained of, especially her extreme nervousness, was not due wholly, if at all', to the accident, but was the result of her mode of life.”
It was competent for defendant to contradict plaintiff’s testimony as to her good health before the accident; but this means physical and not moral health. Under the elementary rule requiring the best kind of evidence suited to the fact to be shown, the proof must be direct and not indirect; that is: the evidence must relate to physical and not moral symptoms. What was proposed to be shown was a purely collateral fact, belonging to- a wholly different class of facts, which was assumed to possess such a relation of cause and effect with the fact to be shown, as that the primary fact might be conclusively presumed from the collateral fact. But the major *10 premise of this syllogism assumes that a relationship which might possibly be true of a class, or in an average, is true of every individual in the class. History and observation disprove-this assumption. The method of reasoning upon which defendant sought to introduce the testimony, has also been discredited by the Supreme Court (see Village of Shelby v. Claggett, 46 O. S., 549, page 555).
It may be worth while to note also that the “irregularity” of life which the physician (Dr. Erwin) understood counsel to ask about, and concerning which he answered, had reference simply to regularity of bodily habit—as to sleeping, eating, etc. —and not, as counsel erroneously assume, to dissolute, dissipated or immoral lapses, as appears in the next succeeding question and answer to those quoted here in the brief. The omission to include these in the brief was doubtless an oversight, but it is nevertheless important, for it takes away the entire basis of fact for the argument. It is often assumed that people with red hair have ungovernable tempers, but the assumed relation would hardly justify proof that a man had red hair, for the purpose of contradicting evidence of his peaceable and quiet disposition.
• 2. On cross-examination the plaintiff was asked the question, “How many times have you been arrested?” which was excluded upon objection, and the dictum in Coble v. State, 31 O. S., 102, is cited as authority to the contrary. That case, however, was a criminal prosecution under a section of the criminal code, providing that convictions may be shown to affect credibility, and is not in point in civil cases of this nature. The established rule as to attacking credibility in civil cases is by proving reputation for want of veracity; -and such proof must be restricted thereto and not involve the general moral character (Perkins v. Mobley, 4 O. S., 668). Moreover, it is quite within tire discretion of the trial court to allow or disallow cross-examination as to a witness’ past record, and it should be excluded if unjust to the witness or not called for by the ease itself. Wroe v. State, 20 O. S., 460 (471); Hanoff v. State, 37 O. S., 178 (180); Bank v. Slemmons, 34 O. S., 142 (147).
*11 Nor can questions be asked in cross-examination as to collateral matters for the purpose of contradiction (Kent v. State, 42 O. S., 426). And in a ease of the nature of the one at bar, refusal to admit evidence of moral lapses has been sustained by our court of last resort (Shelby v. Claggett, 46 O. S., 549). The action of the court here is sustainable also upon still another ground, viz., that it is not permissible under guise of cross-examination at any time, to get in evidence not provable in defense (Duval v. Davey, 32 O. S., 604, page 613).
3. Refusal of the first special charge, to-wit, that “if plaintiff by her own testimony in support of her cause of action raises a -presumption of contributory negligence, the burden rests upon her to remove that presumption,” is also assigned as error. A review of the testimony in the case satisfied me beyond question that' the first impression was correct, and that this charge was properly refused. There is nothing whatever in plaintiff’s testimony or any other testimony in the ease that implies negligence on her part. The theory -urged by defendant throughout the case, and -especially in argument, however, caused the court to lose sight of the first and -better impression on this point, and to leave the question to be determined by the jury. It may be admitted that logically this was a technical error; but if so, it was in the defendant’s favor and not to his prejudice.
The theory of defendant is based on the assumption that plaintiff, on approaching the wagon and seeing the boards projecting over the sidewalk, was bound to anticipate the possibility, first, of the driver getting on his wagon; second, of his starting his team with suddenness; and, third, of starting, not directly forward, or to the left, but to the right, and at such an angle with the pavement that the wagon- would swing upon its hind wheel as a pivot and carry the projecting boards across the pavement like the projecting scythe of an ancient war chariot, .and that, anticipating these possibilities, she was bound to govern herself accordingly and keep out of the way.
It is safe to say that ordinary care requires no such prescience. Although the question was submitted to the jury a§ a fact—of *12 which the defendant can not complain—yet it is clear from the record that as a matter of law, the court should have taken the responsibility of deciding the point and so advising the jury. The jury have decided it properly.
John C. Rogers, for plaintiff.
Rufus B. Smith and Tugman & Baker, for defendant.
4. The charge as to facts excusing contributory negligence, although unnecessary, is not to the prejudice of defendant, if no contributory negligence existed. That it was the duty of the driver to look before starting his team must be conceded. The pavement is for pedestrians exclusively. He had no right to so load his wagon as to make it a dangerous agent to those passing rightfully upon the pavement, and then, without taking any precautions against injuring others, start’in such a-manner as to swing the lumber around in a way that could not possibly be anticipated by anyone on the pavement. The omission to look or to give warning, coupled with the manner and suddenness of starting—that' is, giving the boards an added danger in the impetus of their swing—indicated such an indifference to the rights or safety of those who might be upon the pavement, as made his negligence gross (Unger v. Rwy. Co., 51 N. Y., 497; 96 N. Y., 14; 62 N. Y. 558; 110 N. Y., 504; 108 N. Y., 349; 81 Hun., 604; 127 Ills., 9; 114 Mass., 83; 134 Mass., 118; 116 Ind., 477; 185 Penn. St., 265; 145 N. Y., 196.)
But in the view that I have taken of this case, the question is not a material one, as there was no contributory negligence to be excused. It seems to me—considering the whole ease— that whatever errors were committed in the charge were not prejudicial to the defendant but were rather in his favor, and the motion for a new trial will be overruled.